JOURNAL ENTRY AND OPINION
{¶ 1} This is an appeal from an order of Juvenile Court Judge Janet Burney adjudicating D.W. a delinquent and committing him to the custody of the Ohio Department of Youth Services (ODYS) for committing an offense equivalent to the adult crime of escape. D.W. claims, among other errors, that the admission of double hearsay deprived him of his constitutional protections. We affirm.
 {¶ 2} Following arraignment on charges of drug possession, falsification, tampering with evidence and preparation of drugs for sale, D.W. was committed to the custody of ODYS pending the resolution of those charges and, on the recommendation of the shelter care department of Juvenile Court, was assigned to live at Lincoln Place in Youngstown. It is a privately run facility designed to house offenders or juvenile wards who are less than serious offenders and is staff secure, as opposed to building secure, or locked at all times.
 {¶ 3} On the evening of October 28, 2000, D.W. and another boy tried to leave Lincoln Place by running outside of the building, crossing a courtyard, and climbing a surrounding fence. While his companion was caught by facility personnel in the courtyard, D.W. successfully climbed the fence and disappeared. On October 30, 2000, shelter care coordinator Craig Bruehler filed a sworn complaint in Juvenile Court, alleging D.W.'s breaking of detention from Lincoln Place two days prior.
 {¶ 4} It is unclear from the record exactly when or how D.W. was apprehended, but the case file contains a home detention report detailing the particulars of D.W.'s restrictions at an uncle's home commencing November 26, 2000.
 {¶ 5} He was arraigned on March 8, 2001, at the County Detention Center by Magistrate Walsh and, represented by counsel, ultimately entered a denial to the charge.
 {¶ 6} At trial, Assistant Prosecutor Matthew Golish testified that, prior to entering his denial, D.W. volunteered a statement that he only did it because my baby. [sic] The State entered into evidence a notation Golish made on a case log sheet reflecting D.W.'s voluntary statement, and Golish testified that it was his impression that D.W. left Lincoln Place in order to go to see his newborn child. D.W. objected to all of Golish's testimony as improper but, at the conclusion of the State's case, made no objection to admitting of the case log note into evidence.
 {¶ 7} After the close of the escape charge trial and D.W.'s entry of pleas of admit to various drug or theft-related, felony-level charges under four earlier Juvenile Court case numbers, he was adjudged delinquent and, for the escape offense, sentenced to an indefinite commitment to ODYS for a minimum of six months, to a maximum of his attaining the age of twenty-one. He was also required to attain a G.E.D. diploma before release, and undergo a drug dependency assessment and abide by any resulting treatment recommendations.
 {¶ 8} D.W.'s first two of his six assignments of error states:
 {¶ 9} I. The Trial Court Committed Plain Error by Admitting Double Hearsay Evidence to Establish Key Elements of the Offense of Escape.
 {¶ 10} II. The Improper Admission of Double Hearsay Evidence Deprived Appellant of His Rights to Due Process of Law and Confrontation Guaranteed under the Sixth Amendment to the United States Constitution and Article II, Section 10, of the Ohio Constitution.
 {¶ 11} At trial, the court shelter care coordinator, Craig Bruehler, introduced and authenticated the Lincoln Place report describing D.W.'s escape. We note at the outset that no objection was made at that time, nor upon the introduction of the report into evidence at the close of the State's case. The failure to object limits our review of these assignments of error to whether the introduction of the report is plain error. Crim.R. 52(B) states that, Plain error or defect affecting substantial rights may be noticed although they were not brought to the attention of the court. There is no plain error unless the outcome of an accused's trial clearly would have been otherwise, but for the error.[1] The standard is whether substantial rights of the accused are so adversely affected as to undermine the fairness of the guilt determining process.[2] Notice of plain error is to be taken with the utmost of caution, under exceptional circumstances, and only to prevent a manifest miscarriage of justice.[3]
 {¶ 12} D.W. characterizes the incident report as double hearsay, but it is not. The report, authored by Andie L. Sykes, a former employee at Lincoln Place, identifies the staff members actively participating in the incident as Derrick Oliver and Michael Hall, and notes that it was prepared at 7:15 p.m., or about five minutes after the escape had taken place. In the body of the report, the events of the incident were summarized:
 {¶ 13} On 10/28/00 residents Donta W. and Eddie L. went A.W.O.L. from the SCA unit at approx. 7:10 p.m. Residents were breaking down for showers in their rooms while staff was monitoring the halls. A resident asked for some hygiene supplies and Mr. Hall went to the office to get the supplies. While Mr. Oliver was at the opposite end of the hall intervening in an argument that was going on with some residents, during this time is when Donta W. and Eddie L. ran out of their rooms and out the A.W.O.L. door that is directly across from their room and continued down the steps and out the A.W.O.L. door that leads into the courtyard. Eddie L. was caught by a staff [member] in the courtyard and returned to the unit. Donta managed to climb over the fence surrounding the courtyard and continued to run through the back of the facility out of staff's sight. Police were notified and DH informed.
 {¶ 14} As a factual summary of the incident, this report does not, on its face, purport to rely upon anything other than the personal knowledge of its author, and does not contain any recorded statements of any other witnesses to the event or note that it was prepared using any hearsay. Therefore, we evaluate the propriety of its introduction as merely the single act of Bruehler, the declarant, offering the statement of Sykes, to prove the truth of the matter asserted.
 {¶ 15} Hearsay is "a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted."[4] Hearsay is inadmissible, subject to specific exceptions,[5] including those found in Evid.R. 803. Evid.R. 803(6), the business records exception, creates an exception for a memorandum, report, record, or data compilation, in any form, of acts, events, or conditions, made at or near the time by, or from information transmitted by, a person with knowledge, if kept in the course of a regularly conducted business activity, and if it was the regular practice of that business activity to make the memorandum, report, record, or data compilation, all as shown by the testimony of the custodian or other qualified witness or as provided by Rule 901, unless the source of information or the method or circumstances of preparation indicate lack of trustworthiness.[6]
 {¶ 16} Admissibility of business records under Evid.R. 803(6) rests within the sound discretion of the trial judge and such determination will not be disturbed on appeal absent a clear showing of abuse of discretion.[7] An abuse of discretion implies that the judge's attitude was unreasonable, arbitrary or unconscionable.[8] However, when applying an abuse of discretion standard, a reviewing court may not substitute its judgment for that of the trial court but must be guided by a presumption that the findings of the trial judge are correct.[9]
 {¶ 17} While, during trial, D.W. contended the report was inadmissible because Bruehler could not verify the truth of the factual summary generated by Sykes' report, nor testify through personal knowledge that Sykes specifically authored this report, that is not required.
 {¶ 18} The Ohio version of this rule is identical to the federal rule, Fed.R.Evid. 803(6), for the purpose of settling this question. * * * In its report, the Senate Judiciary Committee on Fed.R.Evid. 803(6) stated:
 `It is the understanding of the committee that the use of the phrase `person with knowledge' is not intended to imply that the party seeking to introduce the * * * data compilation must be able to produce, or even identify, the specific individual upon whose first-hand knowledge the * * * data compilation was based. A sufficient foundation for the introduction of such evidence will be laid if the party seeking to introduce the evidence is able to show that it was the regular practice of the activity to base such * * * data compilations upon a transmission from a person with knowledge, e.g., in the case of * * * a computer printout, upon a report from the company's computer programer [sic] or one who has knowledge of the particular record system. In short, the scope of the phrase `person with knowledge' is meant to be coterminous with the custodian of the evidence or some other qualified witness. The committee believes this represents the desired rule in light of the complex nature of modern business organizations.'[10]
 {¶ 20} As the Ninth District Court of Appeals stated in State v.Vrona,[11]
 {¶ 21} The evidentiary rules provide that such evidence is admissible if the testimony of the custodian of the records or other qualified witness shows, inter alia, that such records are kept in the course of a regularly conducted business activity and that it was a regular practice of that business activity to make the records. While [the witness] was not the custodian of the particular records at issue, he was a qualified witness. The phrase "qualified witness" should be broadly interpreted. * * *
 {¶ 22} "The witness providing the foundation need not have firsthand knowledge of the transaction. Rather, it must be demonstrated that the witness is sufficiently familiar with the operation of the business and with the circumstances of the record's preparation, maintenance and retrieval, that he can reasonably testify on the basis of this knowledge that the record is what it purports to be, and that it was made in the ordinary course of business consistent with the elements of Rule 803(6). * * *.[12]
 {¶ 23} At trial, Bruehler testified that incident reports are regularly generated at the various detention centers in Ohio when any serious occurrence, takes place at the facility. He also stated that, any time a serious incident occurs involving a Cuyahoga County juvenile that he has placed, he personally receives a copy of the incident report on file with the facility, and that he keeps his copy of the report on file in his office. During cross examination he stated that he was positive that the report containing Sykes' factual summary of D.W.'s escape was generated at Lincoln Place, and that Lincoln Place personnel had faxed him another copy of the report on the morning of trial.
 {¶ 24} We find that, despite D.W.'s attempt at impeachment by asking Bruehler, hypothetically, whether the incident report could have been fabricated or contained inaccuracies, Bruehler was a sufficiently qualified witness to authenticate the incident report introduced at trial, and that he demonstrated knowledge of the procedures of production and maintenance of the report to afford it sufficient indicia of trustworthiness to warrant admissibility.
 {¶ 25} We further emphasize that case law is consistent and uniform in holding that the business record exception to the inadmissibility of hearsay statements is not constitutionally improper. The case of Springfield v. Sullins,[13] clearly articulates the basis for an Evid.R. 803(6) exception to the inadmissibility of hearsay:
 {¶ 26} In State v. Dever,[14] the Ohio Supreme Court held that `the admission into evidence of a hearsay statement pursuant to a firmly rooted hearsay exception does not violate a defendant's right of confrontation.'[15] * * * [T]he hearsay exception for business records in Ohio Evid.R. 803(6) is a `firmly rooted' doctrine.[16] As was noted in Weis v. Weis:
 {¶ 27} [T]he exception to the hearsay rule of evidence in such cases is based on the assumption that the records, made in the regular course of business by those who have a competent knowledge of the facts recorded and a self-interest to be served through the accuracy of the entries made and kept with knowledge that they will be relied upon in a systematic conduct of such business, are accurate and trustworthy. In other words, such records are accepted as accurate and trustworthy, until inaccuracy is shown, upon faith in the routine by which and in the purpose for which they are made.[17]
 {¶ 28} As the State established the trustworthiness inherent in the systematic preparation of incident reports at Lincoln Place, through the testimony of Bruehler, it was not constitutionally improper for the State to seek introduction of the incident report at issue, and it was not error for the judge to accept it. Assignments of error I and II have no merit.
 {¶ 29} III. The Trial Court Committed Plain Error by Admitting the Lincoln Place Incident Report Which Was Not Disclosed to Appellant until Immediately Prior to the Commencement of Trial. Juv.R. 24.
 {¶ 30} Under Juv.R. 24(A)(2), a party must, on request, provide the opposing party with all written statements made by any party or witness. Contrary to D.W.'s conclusory assertion on appeal, however, there is no evidence in the record that he either requested or was not given a copy of the Lincoln Place incident report prior to trial. As noted, he did not object to its introduction at trial, and used it to cross-examine Bruehler about its validity and authenticity. D.W. has shown no prejudice resulting from any supposed pre-trial lack of access to the report and has demonstrated no plain error entitling him to reversal based on anything involving the introduction of the Lincoln Place report into evidence. This assignment of error is overruled.
 {¶ 31} IV. Appellant Was Denied Due Process of Law and the Right to Counsel and His Privilege Against Self-incrimination Was Violated When the Trial Court Allowed an Assistant Prosecuting Attorney to Testify as to Admissions Allegedly Made by the Accused at the Time of His Arraignment. Fifth, Sixth and Fourteenth Amendments to the United States Constitution, Article III, Section 10, of the Ohio Constitution.
 {¶ 32} We note that, although D.W.'s lawyer did lodge an objection to Assistant Prosecutor Golish's testimony about a spontaneous admission D.W. made to his escape charge at the time of his arraignment, he expressly stated that he had no objection to the admission of the case log exhibit containing Golish's note memorializing D.W.'s admission in writing into evidence. We, therefore, evaluate this assignment of error under our previously announced plain error standard.
 {¶ 33} In finding D.W. delinquent based on conduct equivalent to the crime of escape, the judge stated the following on the record:
 {¶ 34} Let me say at the outset that I do have concerns about the use of statements made by juveniles at the time of the arraignment. I — I regard arraignments as a very delicate time. And oftentimes, those being arraigned say many things that they fail to see the consequences of of what they're saying. So I don't give too much weight to some excited utterance, or whatever, that a child may have made at the time of the arraignment. I know that I have on occasion had children come in at the time of arraignment who wanted to say all kinds of things to me, and they turned out — and they end up at the close of all that, denying the charge. And since the — at the time of the arraignment, a denial was entered, I accept that as what he — as — as the fact that he did deny the charge at the time of the arraignment, and anything he said — said before he entered the denial, I think is just — just a statement. But I do believe there is sufficient evidence to establish beyond a reasonable doubt that [D.W.] did commit the offense of escape from Lincoln Place, and I hereby adjudge him delinquent on that charge.
 {¶ 35} It is apparent that the judge did not find D.W. to be a delinquent based on Golish's testimony and, in fact, expressly questioned the probative value of any spontaneous, potentially inculpatory statement he may have unwisely blurted out during his arraignment. As we will discuss below, in the absence of any evidence contributed by Golish, Bruehler's testimony and evidence adequately proved guilt on the escape charge beyond a reasonable doubt.
 {¶ 36} To the extent Golish's case log note was entered into evidence, there was no plain error in such admission because it is obvious that the judge did not consider it in finding D.W. delinquent. As to the State's introduction of Golish's oral testimony over objection, any error was harmless error, for the same reasons. This assignment of error is without merit.
 {¶ 37} V. Appellant Was Denied His Constitutional Rights to Due Process of Law and Effective Assistance of Counsel by His Appointed Counsel's Failure to Object to the Introduction of Double Hearsay Evidence Which Was the Only Proof Offered to Establish Key Elements of the Offense of Escape. Sixth Amendment to the Constitution of the United States; Article I, Section 10 of the Ohio Constitution.
 {¶ 38} Ineffective-assistance claims are governed by a two-prong test first articulated in Strickland v. Washington.[18] It must be shown that the lawyer's performance "fell below an objective standard of reasonableness," and "made errors so serious that counsel was not functioning as the `counsel' guaranteed the defendant by theSixth Amendment."[19] Secondly, one must demonstrate prejudice — i.e., "a reasonable probability that, were it not for counsel's errors, the result of the trial would have been different."[20] "A reasonable probability is a probability sufficient to undermine confidence in the outcome."[21]
 {¶ 39} As we ruled in the resolution of D.W.'s first two assignments of error, any objection to the introduction of the Lincoln Place incident report detailing D.W.'s escape would have been properly overruled. D.W.'s trial lawyer did not provide ineffective assistance in failing to do so, and the result of the trial would have been the same in any event. There is no merit to this assignment of error.
 {¶ 40} VI. The Adjudication of Delinquency and Commitment to ODYS Were Against the Manifest Weight of the Evidence.
 {¶ 41} Although a court of appeals may determine that a judgment of a trial court is sustained by sufficient evidence, that court may nevertheless conclude that the judgment is against the weight of the evidence. * * * Weight of the evidence concerns `the inclination of the greater amount of credible evidence, offered in a trial, to support one side of the issue rather than the other. It indicates clearly to the jury that the party having the burden of proof will be entitled to their verdict, if, on weighing the evidence in their minds, they shall find the greater amount of credible evidence sustains the issue which is to be established before them. Weight is not a question of mathematics, but depends on its effect in inducing belief.' (Emphasis added.)
 {¶ 42} When a court of appeals reverses a judgment of a trial court on the basis that the verdict is against the weight of the evidence, the appellate court sits as a `thirteenth juror' and disagrees with the factfinder's resolution of the conflicting testimony. * * * `The court, reviewing the entire record, weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered. The discretionary power to grant a new trial should be exercised only in the exceptional case in which the evidence weighs heavily against the conviction.'[22]
 {¶ 43} R.C. 2921.34(A)(1) defines the crime of escape:
 {¶ 44} No person, knowing the person is under detention or being reckless in that regard, shall purposely break or attempt to break the detention, or purposely fail to return to detention, either following temporary leave granted for a specific purpose or limited period, or at the time required when serving a sentence in intermittent confinement.
 {¶ 45} Only a person under detention may commit the offense of escape by breaking it. According to R.C. 2921.01(E), in relevant part, `Detention' means arrest; confinement in any vehicle subsequent to an arrest; confinement in any public or private facility for custody of persons charged with or convicted of crime in this state or another state or under the laws of the United States or alleged or found to be a delinquent child or unruly child in this state or another state or under the laws of the United States * * *.
 {¶ 46} The testimony of Bruehler established that D.W. was committed to the custody of ODYS pending the resolution of a juvenile court case alleging criminal conduct and, as a result, his office placed him in Lincoln Place. The introduction of the Lincoln Place incident report established that D.W. had left the facility by running across a courtyard, climbing a fence, and leaving the vicinity. This establishes not only that D.W. broke his detention, but also circumstantially proves that he knew he was under detention, and was not allowed to simply walk out the front door if he so chose.
 {¶ 47} The testimony of Bruehler and the lawful introduction of the incident report established each element of an escape charge under R.C. 2921.34, and D.W. was adjudicated delinquent in accord with the manifest weight of the evidence under circumstances that plainly do not constitute a manifest miscarriage of justice. This assignment of error is overruled.
Judgment affirmed.
It is ordered that appellee shall recover of appellant costs herein taxed.
The court finds that there were reasonable grounds for this appeal.
It is ordered that a special mandate issue out of this court directing the Cuyahoga County Common Pleas Court — Juvenile Division, to carry this judgment into execution.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.
KENNETH A. ROCCO, P.J., AND JAMES J. SWEENEY, J., CONCUR.
N.B. This entry is an announcement of the court's decision. See App.R. 22(B), 22(D) and 26(A); Loc. App.R.22. This decision will be journalized and will become the judgment and order of the court pursuant to App.R. 22(E), unless a motion for reconsideration with supporting brief, per App.R. 26(A) is filed within ten (10) days of the announcement of the court's decision. The time period for review by the Supreme Court of Ohio shall begin to run upon the journalization of this court's announcement of decision by the clerk per App.R. 22(E). See, also, S.Ct.Prac.R. II, Section 2(A)(1).
[1] State v. Nicholas (1993), 66 Ohio St.3d 431, 436, 613 N.E.2d 225,229.
[2] State v. Swanson (1984), 16 Ohio App.3d 375, 377.
[3] State v. Pumpelly (1991), 77 Ohio App.3d 470, 475, 602 N.E.2d 714,717.
[4] See Evid.R. 801(C).
[5] Evid.R. 802.
[6] See Evid.R. 803(6).
[7] Peters v. Ohio State Lottery Comm. (1992), 63 Ohio St.3d 296, 299,587 N.E.2d 290; National City Bank v. Fleming (1981), 2 Ohio App.3d 50,56, 440 N.E.2d 590.
[8] Blakemore v. Blakemore, (1983), 5 Ohio St.3d 217,450 N.E.2d 1140.
[9] Focke v. Focke (1992), 83 Ohio App.3d 552, 615 N.E.2d 327.
[10] State v. Knox (1984), 18 Ohio App.3d 36; 480 N.E.2d 120, quoting Senate Report No. 93-1277, Fed.R.Evid. 803(6), Title 28, U.S. Code, 274-275.
[11] (1988), 47 Ohio App.3d 145, 148.
[12] Id. (internal citations omitted).
[13] (1998), 130 Ohio App.3d 346,
[14] (1992), 64 Ohio St.3d 401, 596 N.E.2d 436, certiorari denied, (1993), 507 U.S. 919, 113 S.Ct. 1279, 122 L.Ed.2d 672.
[15] Id. at 401, following White v. Illinois (1992), 502 U.S. 346,112 S.Ct. 736, 116 L.Ed.2d 848.
[16] See, e.g., Leonard v. State (1919), 100 Ohio St. 456, 127 N.E. 464
(discussing "shop-book" entries); Weis v. Weis (1947), 147 Ohio St. 416,72 N.E.2d 245; and Green v. City of Cleveland (1948), 150 Ohio St. 441,83 N.E.2d 63.
[17] Weis v. Weis, supra, at 425-426.
[18] (1984), 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674.
[19] Id. at 687, 104 S.Ct. at 2064, 80 L.Ed.2d at 693.
[20] State v. Bradley (1989), 42 Ohio St.3d 136, 538 N.E.2d 373, paragraph three of the syllabus.
[21] Strickland, supra, 466 U.S. at 694, 104 S.Ct. at 2068,80 L.Ed.2d at 698.
[22] State v. Thompkins (1997), 78 Ohio St.3d 380, 387 (internal cites omitted.)